## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

Case No. 2:13-CV-00121-VEB

JAY THIELEN,

                    Plaintiff,                    DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

## I. INTRODUCTION

In September of 2010, Plaintiff Jay Thielen applied for Supplemental Security

Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social

Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by Cory J. Brandt, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On July 24, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 20).

## II. BACKGROUND

The procedural history may be summarized as follows:

On September 1, 2010, Plaintiff applied for SSI benefits and DIB, alleging disability beginning November 11, 2009. (T at 176-83, 184-91).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On February 2, 2012, a hearing was held before ALJ Caroline Siderius. (T at 41). Plaintiff appeared with an attorney and testified. (T at 57-70). The ALJ also received testimony from Dr. Thomas McKnight (T at 45-57) and Daniel McKinney, a vocational expert. (T at 70-76).

On March 1, 2012, the ALJ issued a written decision denying the applications for benefits and finding that Plaintiff was not entitled to benefits under the Social

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

Security Act.  (T at 8-31).   The ALJ's decision became the Commissioner's final decision on February 16, 2013, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 1-6).

On March 26, 2013, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on June 13, 2013. (Docket No. 10).

Plaintiff filed a motion for summary judgment on September 30, 2013. (Docket No. 15).  The Commissioner moved for summary judgment on November 12, 2013. (Docket No. 16).  Plaintiff filed a reply memorandum of law on November 25, 2013. (Docket No. 17).  As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 7).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

### III. DISCUSSION

A.    **Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude

substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman*

*v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 11, 2009, the alleged onset date, and met the insurance status requirements of the Social Security Act through December 31, 2014. (T at 13-14). The ALJ determined that Plaintiff's degenerative joint disease, degenerative disc

disease, obesity, mild asthma, drug and alcohol addiction/abuse, depression, anxiety, and personality disorder traits were "severe" impairments under the Act. (Tr. 14-20).

The ALJ concluded that, taking into account Plaintiff's substance abuse, his impairments met several of the impairments set forth in the Listings – specifically §§12.04, 12.06, 12.06, and 12.09C. (T at 20-21).   The ALJ determined that Plaintiff's limitations would have more than a minimal impact on his ability to perform basic work activities even if he stopped the substance abuse. (T at 21-22). The ALJ found that, if Plaintiff stopped the substance abuse, he would have the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967 (b), except that he should avoid climbing ladders, ropes or scaffolds; avoid repetitive overhead reaching with his dominant right arm; avoid concentrated exposure to extreme cold, loud noises, vibration, odors, gases, dust, and fumes; avoid concentration exposure to heavy machinery and unprotected heights; and be limited to occasional contact with the public and co-workers. (T at 22-25).

The ALJ found that Plaintiff could not perform any past relevant work, even if he stopped the substance abuse. (T at 25). However, considering Plaintiff's age (39 years old on the alleged onset date), education (high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform if he stopped the substance abuse. (T at

25-26). As such, the ALJ concluded that Plaintiff's substance abuse was a contributing factor material to the disability determination, and Plaintiff was therefore not entitled to benefits for the period between November 11, 2009 (the alleged onset date), through March 1, 2012 (the date of the ALJ's decision). (Tr. 26-27). As noted above, the ALJ's decision became the Commissioner's final decision on February 16, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. He offers three (3) main arguments in support of this position. First, Plaintiff contends that the ALJ erred in rejecting the opinions of Dr. Rosekrans, an examining physician. Second, Plaintiff challenges the ALJ's substance abuse analysis. Third, Plaintiff asserts that ALJ's step five analysis was flawed. This Court will address each argument in turn.

**1.    Dr. Rosekrans**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

In August of 2010, Dr. Frank Rosekrans performed a psychological/psychiatric evaluation. He noted symptoms of depression, anxiety, and anger, with all being moderate in severity. (T at 282). Dr. Rosekrans diagnosed bipolar I disorder (most recent episode mixed), and moderate adjustment disorder with mixed anxiety and depressed mood. (T at 283). He assigned a Global Assessment of Functioning ("GAF") score[2] of 40 (T at 283), which "indicates some impairment in reality testing or communication (e.g., speech is at times illogical,

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Tagin v. Astrue*, No. 11-cv-05120, 2011 U.S. Dist. LEXIS 136237 at *8 n.1 (W.D.Wa. Nov. 28, 2011)(citations omitted).

Dr. Rosekrans opined that Plaintiff had marked limitations with regard to his ability to relate appropriately to co-workers and supervisors and with respect to responding appropriately to and tolerating the pressures and expectations of a normal work setting and maintaining appropriate behavior in that setting. (T at 284). He described Plaintiff as "[c]hronically mental[ly] ill." (T at 285).

Dr. Rosekrans conducted another evaluation in July of 2011. He again diagnosed bipolar I disorder (most recent episode mixed), and moderate adjustment disorder with mixed anxiety and depressed mood. (T at 319). He assigned a GAF score of 45, which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue*, No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012). Dr. Rosekrans assessed moderate impairment with regard to Plaintiff's ability to perform routine tasks without undue supervision, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting with public contact, and maintain appropriate behavior in a work setting. (T at 320).

DECISION AND ORDER – THIELEN v COLVIN 13-CV-00121-VEB

The ALJ gave no weight to Dr. Rosekrans's opinions, finding the examining doctor's assessments internally "convoluted" and inadequately supported by the objective evidence. (T at 21). This Court finds that the ALJ's decision to discount Dr. Rosekrans's opinions was consistent with applicable law and supported by substantial evidence.

Dr. Rosekrans made a series of odd observations in his assessments, which reasonably cast doubt on the credibility of his conclusions. For example, in his summary of Plaintiff's psychiatric history, Dr. Rosekrans noted a prior hospitalization for hallucinations and delusional thinking, which he found were "probably drug related," but then opined that Plaintiff had no mental health symptoms affected by substance abuse or dependence. (T at 282, 283). He did not require Plaintiff to complete all of the customary psychological testing, yielding to Plaintiff's protests that he did not want to answer questions. (T at 286).

In a subsequent assessment, Dr. Rosekrans stated that he was continuing a diagnosis of bipolar disorder because it is "the fashion to diagnose most mood disorders as bipolar" and because he did not "want to disagree with [Plaintiff's] physician." (T at 321). In fact, the diagnosis had been made by a nurse practitioner (Paul Means), who noted that the bipolar symptoms were in the context of "alcohol use . . . and substance abuse." (T at 295). Moreover, notwithstanding his diagnosis,

Dr. Rosekrans explained that he was hesitant to diagnose bipolar disorder because of Plaintiff's history of abusing methamphetamine, which is "known to cause mood swings." (T at 321).   Then, in the very same report, Dr. Rosekrans found that Plaintiff had no mental health symptoms affected by substance abuse or dependence (T at 320).   He also indicated that Plaintiff did "not really qualify as bipolar . . ." (T at 321) and opined that Plaintiff had "over-reported symptoms" in an effort to help his application for SSI benefits. (T at 321-22).

Dr. Thomas McKnight, a non-examining medical expert, reviewed the record and testified at the administrative hearing.   Dr. McKnight faulted Dr. Rosekrans for allowing Plaintiff to "skip" certain psychological testing during his assessment, believing that Dr. Rosekrans "essentially lost control of the session." (T at 50).   Dr. McKnight characterized Dr. Rosekrans's decision to diagnose bipolar disorder because it was the "fashion" to make such a diagnosis as "absurd." (T at 51).   Dr. McKnight noted that the record contained evidence of drug-seeking behavior and substance abuse. (T at 53).   He referenced evidence that Plaintiff smoked 6+ bowls of cannabis on a daily basis (T at 516), which Dr. McKnight believed likely led to a lack of motivation. (T at 54).   The record also contained evidence of amphetamine dependence.   (T at 561).   Plaintiff described himself as a "pothead" and acknowledged using meth daily, although he claimed to have stopped. (T at 500).

Dr. McKnight concluded that the record lacked any sustained period of time when Plaintiff was "reasonably drug-free" and opined that many of Plaintiff's symptoms (depression, anxiety, and lack of motivation) were consistent with substance abuse. (T at 54).  He was unable to find "any substantiated problem secondary to a mental health issue[ ]" independent of substance abuse. (T at 55).  Dr. McKnight found that Plaintiff was "using a substance and [had] used another substance known to cause every difficulty he [was] reporting." (T at 55).  This expert review and the evidentiary record, which supports it, contradict and undermine Dr. Rosekrans's conclusion that Plaintiff had no mental health symptoms affected by substance abuse or dependence.  The ALJ reasonably adopted Dr. McKnight's criticism of Dr. Rosekrans's methodology and findings.

In addition, Dr. Rosekrans's assessment appears to be based almost entirely on Plaintiff's subjective reports and is inconsistent with many of his clinical findings.  For example, the doctor questioned the results of his testing due to Plaintiff's over-reporting of symptoms. (T at 321-22). During the examinations, Plaintiff read and wrote appropriate answers on an intake form, demonstrating an ability to understand, remember, and follow short and simple instructions. (T at 284, 320).  Plaintiff related appropriately to Dr. Rosekrans, maintained concentration, and carried out simple tasks. (T at 284, 320).  Dr. Rosekrans declined to diagnose a

personality disorder and observed "no physical disability." (T at 321).  Thus, it appears the primary ground for Dr. Rosekrans's assessments was Plaintiff's self-reports.  However, Dr. Rosekrans himself found that Plaintiff was over-reporting his symptoms in an effort to obtain SSI benefits. (T at 321-22).  The ALJ discounted Plaintiff's credibility, noting several material inconsistencies in his testimony (T at 24) and history of drug-seeking behavior and substance abuse. (T at 24).  It is reasonable for an ALJ to discount a physician's opinion predicated on subjective complaints found to be less than credible. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Lastly, and critically, it must be noted that the dispostive issue is not whether Plaintiff has disabling limitations.  The ALJ found that he does. (T at 20-21).  As discussed further below, the question is whether Plaintiff would still be disabled absent substance abuse.  Dr. Rosekrans's opinions do not provide support for Plaintiff's suggestion that his mental health limitations would persist absent substance abuse.  Dr. Rosekrans found that there was no indication of current or recent substance abuse (T at 283, 320), a conclusion flatly contradicted by the record, which contains ample documentation of such abuse. (T at 500, 516, 561).  A physician's opinion may be discounted when he or she evidences a lack of

DECISION AND ORDER – THIELEN v COLVIN 13-CV-00121-VEB

awareness with regard to demonstrated substance abuse. *See Duda v. Astrue*, No. C08-5582BHS, 2009 LEXIS 70163, at *41 (W.D. Wash. July 6, 2009).

Moreover, to the extent that Dr. Rosekrans did discuss the link between substance abuse and mental health symptoms, his findings are not supportive of Plaintiff's position.  As noted above, Dr. Rosekrans was hesitant to diagnose bipolar disorder because of Plaintiff's history of abusing methamphetamine, which is "known to cause mood swings." (T at 321).  In sum, this Court finds no reversible error in the ALJ's assessment of Dr. Rosekrans's opinions.  The decision to discount those opinions was supported by substantial evidence and rendered consistent with applicable law.

### 2.       Substance Abuse

When a Social Security disability claim involves substance abuse, the ALJ must first conduct the general five-step sequential evaluation without determining the impact of substance abuse on the claimant. If the ALJ finds that the claimant is not disabled, then the ALJ proceeds no further.  If, however, the ALJ finds that the claimant is disabled, then the ALJ conducts the sequential evaluation and second time and considers whether the claimant would still be disabled absent the substance abuse.  *See Bustamente v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), 20 CFR § 404.1535.

The claimant bears the burden at steps 1-4 of the second sequential analysis of showing substance abuse is not a "contributing factor material to his disability." *Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1177 (E.D.Wa. 2011)(citing *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)).  To meet this burden, the claimant "must provide competent evidence of a period of abstinence and medical source opinions relating to that period sufficient to establish his [substance abuse] is not a contributing factor material to his alleged mental impairments and disability." *Hardwick*, 782 F. Supp. 2d at 1177 (citing *Parra*, 481 F.3d at 748-49).

In this case, the ALJ concluded that, taking into account Plaintiff's substance abuse, his impairments met several of the impairments set forth in the Listings – specifically §§12.04, 12.06, 12.06, and 12.09C. (T at 20-21).  The ALJ determined that Plaintiff's limitations would have more than a minimal impact on his ability to perform basic work activities even if he stopped the substance abuse. (T at 21-22). After conducting the second sequential analysis, the ALJ concluded that Plaintiff's substance abuse was a contributing factor material to the determination of disability, and Plaintiff was therefore not entitled to benefits. (T at 26-27).

Plaintiff contends that this conclusion was in error and argues that his mental health limitations persist independent of his substance abuse.  Plaintiff offers no evidentiary citations to support this argument.    Rather,    Plaintiff    suggests,

DECISION AND ORDER – THIELEN v COLVIN 13-CV-00121-VEB

without support, that the "majority" of his mental health issues cannot be associated with the known side effects of marijuana. Plaintiff apparently wants this Court to take some sort of judicial notice of this purported medical "fact" and override the Commissioner's assessment on this basis. However, as discussed above, Dr. McKnight opined that many of Plaintiff's symptoms (depression, anxiety, and lack of motivation) were consistent with substance abuse. (T at 54). He was unable to find "any substantiated problem secondary to a mental health issue[ ]" independent of substance abuse and noted that Plaintiff was "using a substance" and "[had] used another substance known to cause every difficulty he's reporting." (T at 55).

These findings are sufficiently supported by the overall record and Plaintiff has not offered an evidentiary rationale for overriding the ALJ's decision to give significant weight to Dr. McKnight's expert assessment. *See Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1190 (E.D.W.A. 2009)("The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.")(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). Indeed, "an ALJ may give greater weight to the opinion of a non-examining expert who testifies at a hearing subject to cross-examination." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Secretary of H.H.S.*, 870 F.2d 742, 744 (1st Cir. 1989)); *see also Moody v. Astrue*, No CV-10-

161, 2011 U.S. Dist. LEXIS 125165, at *22-23 (E.D. Wash. Oct. 28, 2011)(finding that ALJ did not err in giving greater weight to medical expert's opinion over treating psychiatrist's opinion concerning substance abuse).

### 3.        Step Five Analysis

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).

The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987).

Plaintiff argues that the ALJ's step five analysis was flawed because the vocational expert was not presented with the limitations noted by Dr. Rosekrans.

DECISION AND ORDER – THIELEN v COLVIN 13-CV-00121-VEB

This restatement of Plaintiff's earlier argument fails for the same reasons. The ALJ reasonably discounted Dr. Rosekrans's opinions and was not obliged to include his limitations in the hypothetical presented to the vocational expert. An ALJ is not obliged to accept as true limitations alleged by Plaintiff and may decline to include such limitations in the vocational expert's hypothetical if they are not supported by sufficient evidence. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Hall v. Colvin*, No. CV-13-0043, 2014 U.S. Dist. LEXIS 45006, at *24-25 (E.D. Wash. Mar. 31, 2014)("A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.")(citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

However, this Court finds merit in Plaintiff's second argument concerning the ALJ's step five analysis. Plaintiff argues that the ALJ did not adequately account for his inability to frequently handle and manipulate objects with his dominant right hand. Daniel McKinney, the vocational expert, testified that a hypothetical claimant with Plaintiff's RFC (as determined by the ALJ) would not be able to function in a competitive labor marked if he or she was also limited to occasional handling and manipulating with his or her dominant hand. (T at 76). The ALJ discounted this testimony because she found that Plaintiff's carpal tunnel syndrome did not meet the

DECISION AND ORDER – THIELEN v COLVIN 13-CV-00121-VEB

durational requirements of the Social Security Act. (T at 20, 26).  *See* 20 C.F.R. §

416.909 (". . . your impairment . . . must have lasted . . . for a continuous period of at

least 12 months. We call this the durational requirement").

A May 2011 EMG/nerve conduction study revealed "evidence of moderate

right carpal tunnel syndrome (median nerve entrapment at wrist) affecting sensory

and motor components." (T at 315).  The ALJ noted that Plaintiff did not complain

of wrist pain during follow-up evaluations. (T at 20).  The ALJ also pointed to the

report of Dr. Robert Rose, a consultative examiner who indicated that Plaintiff had

"adequate" dexterity. (T at 20, 304).  Based on this evidence, the ALJ concluded that

Plaintiff's carpal tunnel syndrome did not satisfy the durational requirement and was

therefore not a "severe" impairment. (T at 20).

However, Dr. Rose's assessment was made in December of 2010, prior to the

EMG/nerve conduction study.  Moreover, the lack of complaints does not mean that

the diagnosed carpal tunnel syndrome and noted sensory and motor effects were

spontaneously resolved prior to the expiration of the 12 month durational

requirement.  It is quite possible Plaintiff did not complain of wrist pain because he

avoided using his right hand for repetitive fine motor activities.   Given the

significance of this issue (the vocational expert found it made a dispositive

difference in terms of whether a hypothetical claimant with Plaintiff's other

limitations could perform work in a competitive labor market), the ALJ was obliged to further develop the record concerning this issue. *See* 20 C.F.R. § 404.1512(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2 (1996); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."); *Sims v. Apfel*, 530 U.S. 103, 110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."). Accordingly, the step five analysis must be revisited on remand following further development of the record concerning Plaintiff's carpal tunnel syndrome.

## E.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter either for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that the claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

For the reasons outlined above, this Court finds that a remand is necessary for further development of the record concerning Plaintiff's carpal tunnel syndrome. It is not clear from the record that Plaintiff is disabled; the ALJ correctly noted that the record was sparse concerning the extent of Plaintiff's right hand limitations. However, further consideration and development of the record is required because of the lack of evidence concerning this important issue and because the ALJ's conclusion that the impairment did not meet the durational requirement is not supported by substantial evidence.

# IV. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 15**, is **GRANTED.**

The Commissioner's motion for summary judgment, **Docket No. 16**, is **DENIED**.

This case is **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Plaintiff, and keep the case open for a period

of sixty (60) days to allow Plaintiff's counsel an opportunity to submit an application for attorneys' fees.

DATED this 2nd day of September, 2014.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – THIELEN v COLVIN 13-CV-00121-VEB